IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS JOHNSON MILLS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:11cv535-MHT |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

## I.   INTRODUCTION

On May 19, 2010, pursuant to a plea agreement, petitioner Thomas Johnson Mills ("Mills") pled guilty to both counts of a two-count information charging him with bank fraud, in violation of 18 U.S.C. § 1344 (Count 1), and bank fraud committed while on pretrial release, in violation of 18 U.S.C. §§ 1344 and 3147 (Count 2).[1]   On August 13, 2010, following a two-day sentencing hearing, the district court sentenced Mills to 51 months in prison.  The court deferred an order of restitution for later determination.  On June 1, 2011, after lengthy negotiations, the parties entered into a restitution agreement, with Mills agreeing to pay $22,500 in restitution.  The district court amended its judgment to include

---

[1] The plea agreement contained a waiver provision whereby Mills relinquished his right to appeal or collaterally attack his conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.

the terms of the restitution agreement.

Mills did not appeal his conviction or sentence.  On July 5, 2011, Mills, proceeding *pro se*, filed this § 2255 motion, asserting the following claims:

1.  His counsel rendered ineffective assistance by providing him with "false statements, untruths, and misinformation" throughout the judicial process, which adversely affected his decisions concerning the plea agreement, sentencing, and restitution.

2.  Counsel was ineffective for failing to investigate plausible defenses as to the amount of loss associated with Count 2 of the information.

3.  Counsel was ineffective for failing to obtain all relevant financial information from Andrew & Dawson, Inc. (the victim under Count 2) before sentencing.

4.  Counsel was ineffective for allowing the Government to present a victim's letter in evidence at sentencing.

5.  Counsel was ineffective for urging Mills to accept the restitution agreement and preventing him from contesting the restitution owed to Andrew & Dawson.

6.  Counsel rendered ineffective assistance, and the Government committed prosecutorial misconduct, by leaving open in the plea agreement the amount of loss associated with Count 2.

7.  The Government committed prosecutorial misconduct by failing to provide Mills or his counsel with financial information relevant to Count 2 prior to his guilty plea or sentencing.

8.  The Government committed prosecutorial misconduct by alleging different loss amounts throughout the proceedings, preventing Mills from rebutting the evidence material to his restitution and sentencing.

2

Doc. Nos. 1 & 1-1.[2]

The Government answers that Mills is not entitled to any relief on his claims of ineffective assistance of counsel because such claims fail to establish deficient performance by counsel and resulting prejudice, as required by *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  Doc. No. 14.  In addition, the government argues that Mills's claims of prosecutorial misconduct lack merit and entitle him to no relief.  *Id*.

Based on consideration of the parties' submissions and the record, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, Mills's § 2255 motion should be denied.

## II.   DISCUSSION

### A.    General Standard of Review

Collateral review is not a substitute for direct appeal; therefore, the grounds for collateral attack on final judgments of conviction are extremely limited. A federal prisoner is entitled to relief under 28 U.S.C. § 2255 only if the district court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum sentence authorized by law, or (4) is otherwise subject to collateral

---

[2] References to document numbers ("Doc. No.") are to those assigned by the Clerk of Court in the instant civil action or, where indicated, to document numbers assigned by the Clerk in the underlying criminal case, Case No. 2:09cr201-MHT.  References to exhibits are to those filed by the Government ("Gov. Ex.") with its answer or by Mills ("Pet. Ex.") with his reply to the Government's answer.  Page references are to those assigned by CM/ECF unless otherwise indicated.

3

attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Id*. at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

B.     **Standard of Review for Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive

5

the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

**C.   Ineffective Assistance of Counsel Claims**

   *1.     "False Statements, Untruths, and Misinformation"*

Mills contends that his trial counsel, Roianne Houlton Conner, provided him with "false statements, untruths, and misinformation" throughout the judicial process, which he says adversely affected his decisions concerning the plea agreement, sentencing, and restitution. Doc. No. 1 at 4; Doc. No. 1-1 at 2-3.

Mills does not provide examples of Conner's alleged misfeasance in this regard in his § 2255 motion or supporting memorandum (*see* Doc. Nos. 1 and 1-1). However, in his reply to the Government's answer, he alleges that Conner lied to him by telling him that an employee of Conner's law firm, Rebecca Weston, had spoken to Teresa Rich, a payroll clerk for a construction company where Mills was once employed, about using Rich as a character

witness on Mills's behalf.[3]  Doc. No. 27 at 10-11.  According to Mills, Conner told him that Rich refused to give any statement in support of Mills and had become "extremely upset and angry at Ms. Weston for even asking [her] to support the Petitioner."  *Id*. at 11.  Mills submits an affidavit from Rich, in which Rich states that she was never approached by Conner or anyone associated with her firm about the possibility of speaking on Mills's behalf.[4]  Pet. Ex. 7 at 1.

Even assuming Rich was never contacted by Conner or an employee of her firm, Mills fails to demonstrate the prejudice required to sustain a claim of ineffective assistance of counsel.  Mills does not show that Rich would indeed have presented testimony that was beneficial to him and that would have changed the outcome of the proceedings.  While Rich's affidavit, if taken as true, may establish that she was not contacted by Conner or an associate of her firm, it does not set forth specifics – or even indicate the general nature of – any testimony Rich would have given on Mills's behalf.  Mills himself says only that Rich could have been a character witness and could have provided "testimony concerning his employment" at the construction company where Mills formerly worked with Rich.  Doc. No. 27 at 10-11.  "[E]vidence about the testimony of a putative witness must generally be

---

[3] Mills indicates that he asked Conner to contact Rich about testifying on his behalf before he entered his guilty plea.  Doc. No. 27 at 10-12.

[4] Conner does not address this specific allegation in an affidavit she filed with the court. Pursuant to the court's orders, her affidavit was filed in response to the claims of ineffective assistance of counsel set forth in Mills's § 2255 motion and supporting memorandum – before Mills filed his reply to the Government's answer containing his specific allegation concerning Rich.

presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

The record reflects that Mills and Rich worked together several years before the events underlying Mills's conviction took place, at a construction company that was not a subject of the instant charges against Mills.  *See* Presentence Investigation Report ("PSI") at 9, ¶ 46.  Mills was fired for stealing money from that company, and an administrative law judge subsequently determined that Mills had "embezzled hundreds of thousands of dollars from [the construction company] by making false book entries, forging checks, and not applying money towards payroll taxes."  *Id.*; *see also, e.g.*, Case No. 2:09cr201-MHT, Doc. No. 48 at 15.  Mills does not claim that he would not have pled guilty to the instant charges if Conner had obtained testimony from Rich,[5] and based on this record, it is also difficult to

_____

[5] The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  It therefore falls upon a petitioner alleging ineffective assistance in this context to establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  In other words, to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial."  *Id.*  *See also, e.g.*, *Slicker v. Wainwright*, 809 F.2d 768 (11th Cir. 1987).  Moreover, in evaluating claims of ineffective assistance of counsel in the context of guilty pleas, a mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors, although required, is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial.  *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990); *see also Holmes v.*

(continued...)

see how testimony from Rich would have changed the outcome of the sentencing hearing[6] or affected Mills's restitution obligations.  Mills's failure to demonstrate prejudice is fatal to this allegation of ineffective assistance of counsel.

In his reply to the Government's answer, Mills also claims Conner rendered ineffective assistance prior to sentencing by failing to allow him sufficient time to review the PSI.  Doc. No. 27 at 13.  However, Mills acknowledged at sentencing that he had reviewed the PSI with Conner.  Case No. 2:09cr201-MHT, Doc. No. 47 at 18.  Moreover, Mills fails to point to errors in the PSI or to show how he was prejudiced as a result of not having sufficient time to review the PSI.  Thus, Mills's claim in this regard does not entitle him to any relief.[7]

In his reply to the Government's answer, Mills says he "gave up an objection to his offense level"[8] based on Conner's telling him, following the first day of the two-day

---

[5](...continued)
*United States*, 876 F.2d 1545 (11th Cir. 1989).

[6] The record reflects that Conner presented character testimony from two witnesses on Mills's behalf at the sentencing hearing.

[7] In his reply to the Government's answer, Mills also maintains that Conner was ineffective for failing to obtain all relevant financial information from Andrew & Dawson, Inc. before sentencing.  Doc. No. 27 at 10 and 14-17.  Mills presents this same allegation as a separate claim in his § 2255 motion; that claim is discussed below in Part II.C.3 of this Recommendation.

[8] Using the Sentencing Guideline found at U.S.S.G. § 2B1.1(a)(1), the probation officer found Mills's base offense level to be 7.  *See* PSI at 6, ¶ 19.  In the PSI, Mills was held accountable for a total loss of $246,708.62.  *Id.*, ¶ 20.  This amount was derived amount the probation officer's finding that Whitney Bank, a victim under Count 1 of the information, incurred a loss of $149,699.23 and Andrew & Dawson, Inc., the victim under Count 2, incurred a loss of $97,009.39.
(continued...)

sentencing hearing, that if he withdrew such an objection, the district court would grant him a two-level reduction based on acceptance of responsibility.[9]  Doc. No. 27 at 15-16.  At sentencing, Mills withdrew an objection regarding the amount of loss incurred by his former employer, Andrew & Dawson, Inc. – the victim under Count 2 of the information.  In that objection, Mills had argued that (a) some of Andrew & Dawson, Inc.'s loss attributed to him in the PSI was actually his salary, which he said should have been deducted from the total amount of attributed loss and (b) many of the checks from Andrew & Dawson, Inc. that he was alleged to have forged either were not forged or were forged by someone else.[10]  At the outset of the second day of the sentencing hearing, Conner advised the court that Mills was withdrawing his amount-of-loss objection.  The court then questioned Mills, under oath, as

---

[8](...continued)

*Id.*, ¶ 15.  Because Mills was held accountable for a total amount of loss falling between $200,000 and $400,000, his offense level was increased by 12 levels pursuant to U.S.S.G. § 2B1.1(b)(1).  *Id.*, ¶ 20.  Mills's offense level was increased another 2 levels pursuant to U.S.S.G. § 3B1.3, because the defendant abused his position of trust as an accountant during the commission of the offense.  *See Id.*, ¶ 22.  Because Mills committed an offense while released on bond, his offense level was increased 3 levels pursuant to U.S.S.G. § 3E1.1.  He received no reduction for acceptance of responsibility.  *See* PSI at 7, ¶¶ 24, 26.  Mills's total offense level was determined to be 24.  *See Id.*, ¶ 28.

[9] Mills's assertion that Conner assured him that the district court would grant him a reduction for acceptance of responsibility if he withdrew the objection in question is not directly addressed in Conner's affidavit, which was filed before Mills raised this assertion in his reply to the Government's answer.

[10] U.S.S.G. § 2B1.1(b)(1)(G) provides for a 12-level increase in the offense level where the amount of loss falls between $200,000 and $400,000.  U.S.S.G. § 2B1.1(b)(1)(F) provides for a 10-level increase in the offense level where the amount of loss falls between $120,000 and $200,000.  Mills had argued that if his salary and the allegedly non-forged checks were deducted from the loss attributed to him, the amount of loss for which he was responsible would fall below $200,000.

to whether it was his wish to withdraw the objection and whether he had discussed the matter in detail with Conner.  Case No. 2:09cr201-MHT, Doc. No. 48 at 5.  Mills answered in the affirmative.  *Id*.  When asked if he had any more questions on the matter for either Conner or the court, Mills answered no and indicated to the court that he agreed with the decision to withdraw the objection.  *Id*.  During this colloquy, Mills also affirmed to the court that no one had coerced or forced him into withdrawing the objection.  *Id*. at 6.

The record does not support Mills's suggestion that he was induced to withdraw the amount-of-loss objection as a result of Conner's telling him that, if he did so, the district court would grant him a two-level reduction based on acceptance of responsibility.  Before Mills withdrew the objection, the district court made it abundantly clear that Mills's decision to pursue the amount-of-loss issue, whether by testifying himself or demanding further evidence from the Government, would not determine whether the court would grant him a reduction for acceptance of responsibility.   At the conclusion of the first day of the sentencing hearing, the court stated as follows:

> Now I just want to emphasize one point, though, that I want Mr. Mills to understand.  That if he decides to testify, that does not mean that I will not give him the two-level decrease.  In other words, I could still give him a two-level decrease.  The opposite is true as well.  If he decides not to testify, that doesn't mean I'm going to give him the two-level decrease either.  I could very well still deny him the two-level decrease.
>
> So in other words, no promises from me either way.
>
> ....
>
> I was just putting him on notice of what could happen.  Not what would

happen.

Case No. 2:09cr201-MHT, Doc. No. 47 at 67-68.  At the start of the second day of the sentencing hearing, the court, after learning that Mills intended to withdraw his amount-of-loss objection, indicated that the issue of Mill's acceptance of responsibility was still open and stated that it would entertain evidence and argument regarding whether or not Mills was entitled to a reduction for acceptance of responsibility.  *Id*., Doc. No. 48 at 3-5.  Before hearing such evidence, the court engaged in the colloquy with Mills (noted above) to determine that he was knowingly and voluntarily withdrawing his objection.  *Id*. at 5-6. Thus, the record shows that at the time Mills withdrew his objection, he knew or should have known there was no guarantee he would receive a reduction for acceptance of responsibility. As such, the record does not support Mills's assertion that he withdrew his objection as a result of Conner's telling him that, if he did so, the court would grant him a two-level reduction based on acceptance of responsibility.  Mills is not entitled to any relief based on this claim.

In his reply to the Government's answer, Mills also maintains that Conner was ineffective for filing a restitution agreement that he did not sign and which misstated the name of the stipulated victim under Count 2 of the information.  Doc. No. 27 at 18-22. According to Mills, he signed a restitution agreement other than the final restitution agreement filed with the district court on June 1, 2011.  *Id*.  The record reflects that at the time of sentencing, the victim under Count 2, Andrew & Dawson, Inc. (for purposes of this

discussion, "ADI"), was a closely held family corporation owned by Brent Salter and his father. *See* Case No. 2:09cr201-MHT, Doc. No. 65. In addition to ADI, the Salters owned and operated Andrew & Dawson, a sole proprietorship (for purposes of this discussion, "A&D"). *Id*. ADI was going through bankruptcy at the time of sentencing, but A&D, a sole proprietorship, was still operating. On October 13, 2010, A&D, a sole proprietorship, was paid $150,423.60 by Amerisure Insurance ("Amerisure") pursuant to a policy A&D held through Thompson Insurance that insured A&D against employee thefts of the type committed by Mills. *Id*. Based on the insurance claim paid by Amerisure, the company had a subrogation interest in any restitution paid to A&D. *Id*. During several rounds of discussions between the United States and the various parties with an interest in the restitution agreement, a proposed written agreement incorrectly identifying Andrew & Dawson as "Andrew & Dawson, Inc., a sole proprietorship" was sent to all parties. Mills apparently signed this proposed agreement. Shortly thereafter, however, a proposed written agreement revising "Andrew & Dawson, Inc., a sole proprietorship," to "Andrew & Dawson, a sole proprietorship," was circulated. The only difference in the two versions was the name of the victim's business, Andrew & Dawson, Inc., versus Andrew & Dawson. The revised version, naming Andrew & Dawson, was signed by Mills on May 4, 2011. Case No. 2:09cr201-MHT, Doc. Nos. 57-1 and 59-1. This was the version of the restitution agreement filed with the district court on June 1, 2011. Under these facts, there is no merit to Mills's claim that Conner was ineffective for filing a restitution agreement that he did not sign and

which misstated the name of the stipulated victim.

### 2.   *Failure to Investigate Plausible Defenses Regarding Loss*

Mills contends that Conner was ineffective for failing to investigate plausible defenses as to the amount of loss associated with Count 2 of the information.  Doc. No. 1 at 5; Doc. No. 1-1 at 3-4.  In this regard, Mills maintains that Conner neglected to conduct an investigation to document his actual salary and moneys owed to him by Andrew & Dawson, Inc. and did not conduct sufficient investigation to determine that "many alleged forged checks were not forged or not forged by Petitioner."  Doc. 1-1 at 3-4.

In a sentencing memorandum filed before sentencing, and also during the first day of the sentencing hearing, Conner presented the district court with the argument that the loss attributed to Mills should be reduced based on Mills's salary and others moneys owed to him by Andrew & Dawson, Inc.  Doc. No. 6-4 at 2; Case No. 2:09cr201-MHT, Doc. No. 47 at 22 and 47-54.  Also during the first day of the sentencing hearing, the district court allowed Mills to identify the checks he claimed were not forged.  *Id*., Doc. No. 47 at 55-58. However, as noted above in Part II.C.1 of this Recommendation, Mills withdrew his amount-of-loss objection on the second day of the sentencing hearing and thereby conceded that his victims' total loss fell between $200,000 and $400,000.  As also noted above, the district court engaged in a colloquy with Mills to determine that his withdrawal of this objection was knowing and voluntary.  Because Mills withdrew his amount-of-loss objection and fails to demonstrate that the amount of Andrew & Dawson, Inc.'s loss attributed to him should have

been lower, he establishes neither deficient performance by Conner nor any resulting prejudice.  Consequently, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 3.        Failure to Obtain Relevant Financial Information

Mills maintains that Conner was ineffective for failing to obtain all relevant financial information from Andrew & Dawson, Inc. before his sentencing.  Doc. No. 1 at 7; Doc. No. 1-1 at 4-5.

The relevant portions of the record reflect that after Mills's arrest on the conduct made the basis of Count 2 of the information, Conner was provided with a number of discovery items, including checks that the Government alleged were forged and/or fraudulently negotiated by Mills on Andrew & Dawson, Inc.'s account.  *See* Doc. No. 6 at 2; Doc. No. 6-1.  On May 6, 2010, the Government provided Conner with a chart that identified the checks the Government alleged were a part of Mills's fraud against Andrew & Dawson, Inc.; the chart calculated the amount of loss caused by that fraud to be $97,009.39.  Gov. Ex. G.  The checks and chart provided to Conner were used by the probation office in determining Mills's total offense level in the PSI, which was adopted by the district court at sentencing.

After Mills's guilty plea but before sentencing, the Government received additional bank records relevant to Mills's fraud under Count 2.  Gov. Ex. H.  During the first week of August 2010, the Federal Bureau of Investigation provided the prosecution with a chart identifying additional checks that had been forged and/or fraudulently negotiated by Mills.

15

Gov. Exs.  I and J.  The second chart calculated the total amount of loss by Andrew &
Dawson, Inc. attributable to Mills to be $172,923.60 in forged and stolen checks.  *Id*.
However, the additional amount of loss contained in the second chart was not included in the
PSI, which, as noted, attributed $97,009.39 in loss by Andrew & Dawson, Inc. to Mills.
Thus, the additional amount of estimated loss did not affect Mills's total offense level or
sentence.

The Government advised Conner of the second chart prior to Mills's sentencing
hearing – held on August 12 and 13, 2010 – and provided Conner with a copy of that chart
on August 17, 2010.  Mills's father then provided the second chart and the corresponding
checks to Richard A. Roper, a handwriting expert.  Doc. No. 6 at 5.  In November 2010,
Roper provided Conner with a report in which he found the total amount of loss by Andrew
& Dawson, Inc. attributable to Mills to be $124,440.58.  *Id*.

In its response to this claim by Mills, the Government correctly observes that while
Conner did not have all of the financial information relevant to the fraud Mills perpetrated
on Andrew & Dawson, Inc. at the time of sentencing, the record demonstrates that this was
not due to any deficiencies on Conner's part.  Moreover, the additional checks obtained after
Mills's guilty plea and sentencing were not used by the probation office in determining
Mills's total offense level and thus did not affect his sentence.  The FBI calculated the total
amount of Andrew & Dawson, Inc.'s loss attributable to Mills to be $172,923.60.  Mills's
own handwriting expert, Roper, calculated the total amount of Andrew & Dawson, Inc.'s loss

attributable to Mills to be $124,440.58.  Both the FBI's calculation and Roper's calculation

exceeded the amount of  Andrew & Dawson, Inc.'s loss attributed to Mills in the PSI and at

sentencing, i.e., $97,009.39.  Consequently, Mills cannot demonstrate how Conner's failure

to obtain all relevant financial information from Andrew & Dawson, Inc. before sentencing

prejudiced him at sentencing.

Nor can any alleged deficiency by Conner in failing to obtain such information earlier

have prejudiced Mills on the question of restitution.  The restitution agreement negotiated

by Conner allows Mills to satisfy his restitution obligation to Andrew & Dawson by paying

$22,500 – an amount substantially less than the loss amounts calculated in the PSI, by the

FBI, and by Roper.  Mills fails to demonstrate deficient performance by Conner and resulting

prejudice.  Therefore, he is not entitled to any relief based on this claim of ineffective

assistance of counsel.

### 4.    *Letter from Victim at Sentencing*

Mills contends that Conner rendered ineffective assistance of counsel by failing to

object to the admission at sentencing of a letter from the owner of one of the businesses that

Mills used to execute the bank fraud scheme made the basis of Count 1 of the information.

Doc. No. 1 at 8; Doc. No. 1-1 at 5.  Mills maintains that admission of the letter, which was

read aloud at sentencing, deprived him of his right to confront his accusers.  *Id*.

It is well settled that "[i]n considering a sentence the trial judge may conduct a broad

inquiry which is 'largely unlimited either as to the kind of information he may consider, or

17

the source from which it may come.'" *United States v. Darby*, 744 F.2d 1508, 1538 (11th Cir. 1984) (quoting *United States v. Inendino*, 604 F.2d 458, 463-64 (7th Cir. 1979)). Mills cannot show that an objection to admission of the letter would not have been successful. His failure to demonstrate deficient performance or resulting prejudice precludes relief on this claim of ineffective assistance of counsel.

### 5.    *Advice to Accept Restitution Agreement*

Mills contends that Conner was ineffective for urging him to accept the restitution agreement and, as a consequence, preventing him from contesting the restitution owed to Andrew & Dawson. Doc. No. 1 at 14; Doc. No. 1-1 at 6-7. This claim amounts to nothing more than a cursory allegation that Conner did not advocate forcefully enough on Mills's behalf in negotiating the restitution agreement and in recommending that he accept it. Mills fails to demonstrate deficient performance by Conner in this regard or any resulting prejudice (i.e., that he might have obtained a more favorable restitution agreement). Therefore, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 6.    *Leaving Open Loss Amount*

Mills contends that Conner rendered ineffective assistance of counsel by leaving open in the plea agreement the amount of loss associated with Count 2. Doc. No. 1 at 14; Doc. No. 1-1 at 7-8. This claim is another variation on Mills's contention that some of Andrew & Dawson, Inc.'s loss attributed to him in the PSI and at sentencing was actually his salary, which should have been deducted from the total amount of attributed loss. As noted above,

Mills withdrew his amount-of-loss objection at the commencement of the second day of the sentencing hearing.  The district court engaged in an on-the-record colloquy with Mills to determine that his withdrawal of this objection was knowing and voluntary.  Mills also fails to demonstrate that the amount of Andrew & Dawson, Inc.'s loss attributed to him should have been lower, but instead merely asserts that it was miscalculated.   Under these circumstances, Mills establishes neither deficient performance by Conner nor any resulting prejudice.  Consequently, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

**D.    Prosecutorial Misconduct Claims**

        *1.    Leaving Open Loss Amount*

In connection with the above-discussed claim of ineffective assistance of counsel, Mills alleges that the Government committed prosecutorial misconduct by leaving open in the plea agreement the amount of loss associated with Count 2.  Doc. No. 1 at 14; Doc. No. 1-1 at 7-8.   More specifically, Mills contends that the prosecution misrepresented the Sentencing Guidelines by arguing against Mill's claim that some of Andrew & Dawson, Inc.'s loss attributed to him constituted his salary and should have been deducted from the total amount of attributed loss.  *Id*.  As noted, however, Mills knowingly and voluntarily withdrew his objection and argument in this regard at the second day of sentencing and conceded that his victims' total loss fell between $200,000 and $400,000.  Mills is not entitled to any relief based on this claim of prosecutorial misconduct.

**2.    *Failure to Provide Financial Information and Alleging Different Loss Amounts***

Mills contends that the Government committed prosecutorial misconduct by (a) failing to provide him or his counsel with financial information relevant to Count 2 prior to his guilty plea or sentencing and (b) alleging different loss amounts throughout the proceedings, preventing him from rebutting the evidence material to his restitution and sentencing. Doc. No. 1 at 15; Doc. No. 1-1 at 8-12.

None of the information cited by Mills in this regard was exculpatory. Thus, the Government is correct in observing that earlier disclosure of this evidence would have, if anything, worked to Mills's detriment, because it would have substantially increased the amount of loss attributable to him. The checks about which Mills complains in making this claim were not obtained by the Government until after Mills pled guilty. While the second chart calculating additional loss attributable to Mills was provided to Conner after Mills's sentencing hearing, the Government advised Conner of its contents prior to sentencing and also informed Conner that it did not intend to use the chart to increase Mills's relevant conduct. The additional amount of loss set forth in the second chart was indeed not included in the PSI and did not affect Mills's total offense level or sentence. Mills makes no showing how the Government's allegations of different loss amounts throughout the proceedings prevented him from rebutting the evidence material to his restitution and sentencing or in any way prejudiced him. The amount of loss set forth in the second chart greatly exceeded the amount of Andrew & Dawson, Inc.'s loss attributed to Mills both at sentencing and in the

20

restitution agreement.  Mills fails to demonstrate Government misconduct or any prejudice resulting from the alleged misconduct.  Therefore, he is not entitled to any relief based on this claim.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Mills be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 13, 2013**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 30th day of October, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE